■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH KRUPPENBACHER, Appellant. [917 NYS2d 405]—

Kavanagh, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered May 14, 2009, upon a verdict convicting defendant of the crimes of rape in the first degree, kidnapping in the second degree (two counts), assault in the second degree (three counts), attempted assault in the second degree, sexual abuse in the first degree and unlawful imprisonment in the first degree (three counts).

Defendant was arrested and subsequently charged by indictment with a series of crimes against numerous prostitutes in Schenectady County during a four-month period beginning in January 2008. Ultimately, he was convicted after trial of rape in the first degree, kidnapping in the second degree (two counts), unlawful imprisonment in the first degree (three counts), as-

sault in the second degree (three counts), attempted assault in the second degree and sexual abuse in the first degree.[1] He was later sentenced to an aggregate prison term of 76⅓ to 79 years, plus 20 years of postrelease supervision. Defendant now appeals, asserting, among other things, that (1) the charges alleging that he kidnapped and unlawfully imprisoned his victims merged with the other crimes he is alleged to have perpetrated against them and should have been dismissed, (2) he did not receive meaningful assistance of counsel, (3) as to some of the convictions, the evidence introduced at trial was legally insufficient, (4) the testimony of each victim at trial was, as a matter of law, incredible and the jury's verdict, as a result, was not supported by the weight of the credible evidence, and (5) the sentence imposed was harsh and excessive.

Defendant initially claims that his convictions for kidnapping and unlawful imprisonment should be reversed because they merged with his convictions for assault, attempted assault and sexual abuse. Specifically, he argues that since the restraint he is alleged to have used against each of the victims constitutes the basis for his two convictions for kidnapping and three convictions of unlawful imprisonment and was perpetrated as part of his subsequent assault and sexual abuse of them, it became an integral part of those crimes and merged with them. As a result, the restraint did not constitute a separate criminal act and his convictions for kidnapping and unlawful imprisonment should be dismissed. Initially, we note that defendant failed to preserve this issue for appellate review because he did not make this argument in his motion to dismiss addressed to County Court (*see People v Adamson*, 47 AD3d 318, 322 n 5 [2007], *lv denied* 10 NY3d 807 [2008]; *People v Ross*, 43 AD3d 567, 570-571 [2007], *lv denied* 9 NY3d 964 [2007]; *People v Richard*, 30 AD3d 750, 755 [2006], *lv denied* 7 NY3d 869 [2006]; *People v Rosado*, 26 AD3d 532, 533 [2006], *lv denied* 7 NY3d 762 [2006]; *see also People v Leiva*, 59 AD3d 161, 161 [2009], *lv denied* 12 NY3d 818 [2009]).

To the extent that defendant claims that the failure to raise the merger issue at trial constituted ineffective assistance by his counsel, we find that, on the facts presented, the merger doctrine did not apply. Kidnapping and unlawful imprisonment will merge and become part of the underlying criminal act if the restraint imposed was simply a "minimal intrusion necessary and integral to [the other] crime[s committed against the victims]" and was "simultaneous [or] inseparable from [these

---

1. The jury found defendant guilty of charges involving four of the victims and not guilty of all charges relating to a fifth victim.

other] crime[s]" (*People v Gonzalez*, 80 NY2d 146, 153 [1992]; *see People v Cassidy*, 40 NY2d 763, 767 [1976]). Here, each victim testified to agreeing to accompany defendant in his truck as part of a sexual solicitation. However, each testified to how she became frightened after getting into the vehicle and described, in detail, how defendant used force and threats in order to prevent each of them from getting out of his truck. One victim testified to becoming alarmed when defendant drove the truck to a secluded area and claimed that, as she attempted to get out of the vehicle, defendant threatened her with a knife and said, "Listen b. . .h,* I'll kill you. Put your seat belt back on." She further testified that defendant grabbed her by the hair and told her he would "feed [her] to the pigs." A struggle ensued and the victim described how she was injured when she jumped from the vehicle and struck the pavement. Another victim testified to becoming frightened when defendant drove the truck to a secluded area near a landfill. She recalled pleading with him to let her go, at which time she claimed that defendant threatened her with a knife, placed his hands on her throat and attempted to restrain her by tying her with a rope. A third victim claimed that, upon arriving at a shopping center parking lot in his truck, defendant locked the doors and, when she attempted to get out of the vehicle, threatened her with a knife. Again, a struggle ensued and the victim claimed that, when she finally escaped, defendant attempted to run her over with the vehicle. As described, the degree of restraint alleged to have been imposed by defendant in each instance was more than a "minimal intrusion" and represented "a crime in itself" that did not merge with the other crimes he perpetrated against these victims (*People v Gonzalez*, 80 NY2d at 153; *see People v Cassidy*, 40 NY2d at 766-767).

As for defendant's other claims regarding the legal representation he received during these proceedings, we note that, as a result of counsel's efforts on his behalf, defendant was not convicted of a majority of the crimes contained in the indictment (*see People v Malcolm*, 74 AD3d 1483, 1487 [2010]; *People v Somerville*, 72 AD3d 1285, 1288 [2010]). In addition, counsel ably cross-examined the witnesses, in particular the victims who testified on behalf of the prosecution at trial.

Defendant also argues that many of the crimes for which he now stands convicted were not supported by legally sufficient evidence.[2] Initially, he challenges his kidnapping and unlawful imprisonment convictions on the ground that the evidence did

---

2. While we agree with the prosecution that defendant failed to preserve his claims of legal insufficiency as to the charges filed in regard to one of the

not support a finding that he had restrained his victims as that term is defined by the Penal Law. As for kidnapping, the prosecution was required to prove that defendant abducted his victims (*see* Penal Law § 135.20) by restraining them "with intent to prevent [their] liberation by either (a) secreting or holding [them] in a place where [they were] not likely to be found, or (b) using or threatening to use deadly physical force" (Penal Law § 135.00 [2]). To restrain a person means to restrict his or her "movements intentionally and unlawfully in such manner as to interfere substantially with his [or her] liberty by moving him [or her] from one place to another, or by confining him [or her] either in the place where the restriction commences or in a place to which he [or she] has been moved, without consent and with knowledge that the restriction is unlawful" (Penal Law § 135.00 [1]). As for unlawful imprisonment, the prosecution was required to establish that defendant restrained the victim "under circumstances which expose[d her] to a risk of serious physical injury" (Penal Law § 135.10).

Here, each victim testified to being forcibly confined to defendant's truck and being threatened by defendant with a knife. Two victims testified to being taken by defendant to remote locations where they were held against their will and injured when they tried to escape. A third, while not injured, claimed to have been choked by defendant and testified that he attempted to run her over with his vehicle as she made her escape. This testimony, in addition to establishing that each victim was subjected to a degree of restraint, which constituted a separate and independent criminal act, also provided a legally sufficient basis for defendant's conviction for kidnapping and unlawful imprisonment (*see People v Bowman*, 79 AD3d 1368, 1369 [2010]).

Defendant also claims that his conviction for sexual abuse in the first degree is not supported by legally sufficient evidence because it was never established at trial that he subjected the victim to any form of sexual contact (*see* Penal Law § 130.65 [1]; *see also* Penal Law § 130.00 [8]). Sexual contact is defined as that contact with "the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3]). Here, the victim testified that after she escaped from the vehicle, defendant caught her, knocked

victims (counts 8 and 11) (*see People v Stearns*, 72 AD3d 1214, 1216 n 2 [2010], *lv denied* 15 NY3d 778 [2010]; *People v Morrison*, 71 AD3d 1228, 1229 [2010], *lv denied* 15 NY3d 747 [2010]), we do find that defendant's motion to dismiss was sufficiently detailed to preserve his claims regarding the assault in the second degree conviction in count 27.

her to the ground and, in the process of dragging her back to the truck, her pants, long underwear and boots came off. The victim claimed that, in the ensuing struggle, defendant climbed on top of her as she lay face down on the pavement and he attempted to pry open her legs by placing his hands near her vagina. She recalled that during the attack, he forced his hands on her buttocks and placed his naked thighs against her legs. In addition, blood stains identified as coming from defendant were later found on the undergarments that the victim was wearing at the time she was attacked. This evidence established that defendant had physical contact with "the sexual or other intimate parts of [the victim's] person for the purpose of gratifying [his] sexual desire" (Penal Law § 130.00 [3]) and provided a legally sufficient basis for his conviction of sexual abuse in the first degree (see People v Watson, 281 AD2d 691, 697 [2001], lv denied 96 NY2d 925 [2001]).

We do agree with defendant that his conviction for assault in the second degree under count 27 must be reversed because no evidence was presented that this victim sustained "physical injury" when defendant threatened her with a knife (see Penal Law § 120.05 [2]). Physical injury is defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]; see People v Gonzalez, 64 AD3d 1038, 1041-1042 [2009], lv denied 13 NY3d 796 [2009]; People v Gragnano, 63 AD3d 1437, 1439-1440 [2009], lv denied 13 NY3d 939 [2010]). Here, the victim testified that while she struggled with defendant, he cut the knuckle on her left middle finger with a knife causing it to bleed. While it is true that, to constitute physical injury, the pain caused by such a wound need not "be severe or intense to be substantial" (People v Foster, 52 AD3d 957, 959 [2008], lv denied 11 NY3d 788 [2008] [internal quotation marks and citations omitted]; see People v Chiddick, 8 NY3d 445, 447 [2007]; People v Stearns, 72 AD3d at 1216-1217), it must, at the minimum, cause some pain or, to some extent, result in some impairment of the use of the finger. No such testimony was elicited from the victim and, aside from an "insignificant" scar on her finger, no evidence was introduced that she lost the use of this finger or that it was impaired by this injury (see People v Williams, 46 AD3d 1115, 1117 [2007], lv denied 10 NY3d 818 [2008]).[3] However, there can be no doubt that defendant harbored an intent to harm the victim when he attacked her

---

3. Given this result—and the absence of evidence establishing that the victim was physically injured in the attack as a result of the knife—we need not address defendant's claim that County Court should have submitted assault in the third degree as a lesser included offense.

with his knife. As a result, legally sufficient evidence does exist to establish that he attempted to assault this victim with this knife and provides a legally sufficient basis for his conviction of the lesser included offense of attempted assault in the second degree (see Penal Law §§ 110.00, 120.05 [2]; People v Williams, 46 AD3d at 1117; see also People v Alvarez, 38 AD3d 930, 935 [2007], lv denied 8 NY3d 981 [2007]).

Defendant also claims that the verdict is against the weight of the credible evidence because the testimony given by each victim—both in content and context—is incredible as a matter of law and should not be used to support any of the charges for which he now stands convicted. When conducting a weight of the evidence review, we must view the evidence introduced at trial in a neutral light (see People v Race, 78 AD3d 1217, 1219 [2010]; People v Marshall, 65 AD3d 710, 712 [2009], lv denied 13 NY3d 940 [2010]) giving deference to the jury's " 'opportunity to view the witnesses, hear the testimony and observe demeanor' " (People v Burroughs, 64 AD3d 894, 897 [2009], lv denied 13 NY3d 794 [2009], quoting People v Bleakley, 69 NY2d 490, 495 [1987]; accord People v Race, 78 AD3d at 1219). If a different verdict would not have been unreasonable, we then must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (People v Bleakley, 69 NY2d at 495, quoting People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]; accord People v Stewart, 60 AD3d 1111, 1113 [2009], lv denied 12 NY3d 860 [2009]).

In effect, defendant argues that the character of each victim is such that any testimony she gave at trial is inherently suspect. He also contends that their accounts as to what transpired are so inconsistent and implausible that their testimony is not credible and must be rejected as a matter of law. While legitimate questions were undoubtedly raised by defendant's counsel as to the credibility of these witnesses—and aspects of their testimony are troublesome—we cannot conclude that their testimony, when viewed in the context of the other evidence introduced at trial, was incredible or inherently unreliable as a matter of law (see People v Richards, 78 AD3d 1221, 1224 [2010]; People v Stearns, 72 AD3d at 1216). We note that three victims promptly reported these attacks to the police, two of whom did so after they had been found bruised and battered by the police at an odd hour, walking on a public highway. Each victim, independent of each other and prior to defendant's arrest, gave descriptions of the perpetrator and his vehicle that were largely consistent with each other and provided accounts as to what

transpired—the nature of a solicitation, the vehicle, the attempt to restrain them, the threats, and the use of a weapon—that were strikingly similar to each other. Moreover, defendant does not deny being the individual who was with these victims when they claim these attacks occurred.[4] This additional proof provided compelling corroboration of the victim's testimony and belies any conclusion that defendant's convictions are not supported by the weight of the credible evidence introduced at trial.

Finally, defendant's sentence, while severe, can hardly be considered harsh and excessive given the number of victims, the threats attributed to him, the use of a knife and the nature of the assaults he stands convicted of perpetrating against these women. In our view, extraordinary circumstances do not exist that would warrant a reduction of the sentence in the interest of justice (*see People v Newkirk*, 75 AD3d 853, 857-858 [2010]). We have examined defendant's remaining claims and find that they are without merit.

Peters, J.P., Stein, Garry and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, by reducing defendant's conviction of assault in the second degree under count 27 of the indictment to attempted assault in the second degree; vacate the sentence imposed thereon and matter remitted to the County Court of Schenectady County for resentencing; and, as so modified, affirmed.

---

4. In fact, defendant admits soliciting these victims for an illicit purpose and becoming embroiled in an altercation with each of them. However, he claims that in each instance he argued with the victims over money and denies restraining or attempting to sexually assault any of them.