The People of the State of New York, Respondent, v Davone Torres, Appellant. [14 NYS3d 151]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Latella, J.), rendered May 9, 2013, convicting him of robbery in the second degree (two counts) and assault in the second degree (two counts), after a nonjury trial, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the defendant's convictions of robbery in the second degree under counts three and four of the indictment, and assault in the second degree under count six of the indictment, vacating the sentences imposed thereon, and dismissing those counts of the indictment against the defendant; as so modified, the judgment is affirmed.

The defendant, and a codefendant, David Caraballo, were convicted after a nonjury trial of two counts of robbery in the second degree and two counts of assault in the second degree in connection with an incident that occurred on October 22, 2011. The complainant, Gary Stopa, an off-duty detective with

the New York City Police Department, testified that, while walking his dog in Far Rockaway, Queens, he was approached by a juvenile, who, brandishing a fake handgun resembling a Glock pistol, attempted to rob him. Stopa identified himself as a police officer and pointed his off-duty firearm at the juvenile, who dropped the fake gun and ran away, leaving the fake gun behind. Stopa placed the fake gun in the front pocket of the sweatshirt he was wearing. He called the 911 emergency number to report the incident and was putting a leash on his dog when Caraballo approached him on a bicycle. While Stopa was on the telephone with the 911 operator, Caraballo got off of the bicycle and stood in front of Stopa, about a foot away, pointing a gun at Stopa and demanding that he hand over his off-duty firearm. A scuffle ensued between Stopa and Caraballo. During the scuffle, Stopa managed to break the slide off of the gun that Caraballo had pointed at him and dropped it on the ground.

The defendant, who had been lingering nearby, charged toward Stopa. According to Stopa, he then drew his off-duty firearm and identified himself as a police officer. The defendant reportedly hesitated, but then continued to charge at Stopa. The defendant and Caraballo wrestled with Stopa for his off-duty firearm. The gun went off and a bullet narrowly missed Stopa's face. Ultimately, Stopa was able to discharge his gun and the defendant and Caraballo ran off.

It was only after the incident and observing that the fake gun had been removed from his front pocket that Stopa realized that the gun which Caraballo had pointed at him was the same fake gun that the juvenile had dropped only moments before. Stopa testified that Caraballo had managed to remove the fake gun from Stopa's front pocket without Stopa's knowledge while he had been tending to his dog and speaking to the 911 operator. Stopa alleged that as a result of the incident, he suffered, inter alia, tremendous pain in his shoulder, which required multiple surgeries and limited the range of motion in his shooting arm. The defendant and Caraballo were indicted and charged with, inter alia, two counts of robbery in the second degree in connection with the fake gun and two counts of assault in the second degree.

We agree with the defendant that the evidence was legally insufficient to prove beyond a reasonable doubt his guilt of robbery in the second degree pursuant to Penal Law § 160.10 (1) and (2) (a), based on the alleged robbery of the fake gun. Under these provisions, a person is guilty of robbery in the second degree when that person forcibly steals property and (1) that

person is aided by another person actually present (*see* Penal Law § 160.10 [1]), or (2), in the course of the commission of the crime or immediate flight therefrom, that person or another participant in the crime causes physical injury to any person who is not a participant in the crime (*see* Penal Law § 160.10 [2] [a]). A person forcibly steals property and commits robbery when, in the course of committing a larceny, that person uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking or for the purpose of compelling the owner of such property or another person to deliver the property or to engage in other conduct which aids in the commission of the larceny (*see* Penal Law § 160.00).

Here, Stopa's testimony, and the rational inferences that could be drawn therefrom, did not establish that Caraballo used force when he took the fake gun from Stopa's pocket. Stopa testified that he did not feel or witness Caraballo take the fake gun from his pocket. Furthermore, Stopa's testimony revealed that the defendant never had possession of or even touched the fake gun. " 'The core requirement for all three degrees of robbery under the Penal Law is proof that the defendant forcibly stole property from another' " (*People v Hiraeta*, 117 AD3d 964, 965 [2014], quoting *People v Lopez*, 73 NY2d 214, 219 [1989]). Here, there was no evidence that either the defendant or Caraballo forcibly took the fake gun from Stopa. Thus, even when viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), the evidence was legally insufficient to establish the defendant's guilt of robbery in the second degree beyond a reasonable doubt.

We also must vacate the defendant's conviction of assault in the second degree under Penal Law § 120.05 (6) on the ground that the evidence is legally insufficient to support the conviction. The statute is satisfied when a defendant intentionally causes physical injury in the course and furtherance of the commission or attempted commission of a felony, or during the immediate flight therefrom (*see* Penal Law § 120.05 [6]). A conviction of an underlying felony contained in the indictment or its attempted commission is an essential element of the crime (*see People v Sanchez*, 128 AD2d 377 [1987]). Since the defendant's convictions of robbery in the second degree are vacated, the conviction of assault in the second degree pursuant to Penal Law § 120.05 (6) must be vacated as well (*see People v McCallop*, 34 AD3d 360, 361 [2006]).

However, we affirm the defendant's conviction of assault in the second degree under Penal Law § 120.05 (3). The defendant's arguments on appeal that the evidence was legally insufficient because the People failed to prove that he knew Stopa was a police officer and that he injured Stopa to prevent him from performing a lawful duty are unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484 [2008]). In any event, viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d at 621), we find that it was legally sufficient to establish the defendant's guilt of that crime. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict finding the defendant guilty of assault in the second degree under Penal Law 120.05 (3) was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]; *People v Gurgov*, 129 AD3d 989 [2d Dept 2015]). To sustain a conviction under Penal Law § 120.05 (3), the People were required to prove that the defendant, with intent to prevent a police officer from performing a lawful duty, caused physical injury to such police officer (*see People v Sawyer*, 270 AD2d 293 [2000]). Here, the jury reasonably determined that all of the statute's elements were established. The fact that Stopa had yelled "police" when the defendant initially charged toward him, and that the defendant, after briefly hesitating, continued his charge, supported the jury's conclusion that the defendant heard what Stopa had yelled and, thus, was aware that Stopa was performing a lawful duty, notwithstanding that he was out of uniform. In this respect, many of the cases cited by the defendant on appeal, wherein the police officers were in uniform, are distinguishable. The lawful duty that Stopa was performing involved his continuing efforts to safeguard, and to later turn in, the fake gun he initially seized from the juvenile as evidence of that separate crime (*see People v Bueno*, 18 NY3d 160 [2011]; *People v Sawyer*, 270 AD2d 293 [2000]). It was reasonable for the jury to infer that the defendant knew of the significance of the fake gun from his close proximity to the events and his involvement with Carabello in the attack on Stopa. Regarding the physical injury element, the People established, through the testimony of Stopa, that he received a painful shoulder injury in the altercation, which required surgery and several months of

physical therapy (*see* Penal Law § 10.00 [9]; *People v Peterson*, 71 AD3d 1419 [2010]; *People v Williams*, 46 AD3d 1115 [2007]).

Moreover, contrary to the defendant's contention, the evidence was not legally insufficient and was not against the weight of the evidence on the ground that Stopa's testimony was incredible. Stopa's testimony was corroborated in crucial respects by his 911 call, a video, and a neighborhood witness. Dillon, J.P., Dickerson, Roman and LaSalle, JJ., concur.